UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

NOT FOR PUBLICATION

| BRADLEY, | Civil Action No. |
| Plaintiff, | 2:15-CV-2603-SDW-SCM |
| v. | **OPINION AND ORDER ON PLAINTIFF'S MOTION FOR LEAVE TO AMEND** |
| RODRIGUEZ, | |
| Defendants. | **[D.E. 71]** |

**STEVEN C. MANNION**, United States Magistrate Judge.

Before the Court is Plaintiff's motion for leave to file an amended complaint.[1] Defendant opposed the motion,[2] and Plaintiff replied.[3] The Court has reviewed the parties' respective submissions, and heard oral argument on February 13, 2018.[4] For the reasons set forth herein, Plaintiff's motion is **denied**.

---

[1] (ECF Docket Entry ("D.E.") 71, Mot. to Am.).

[2] (D.E. 72, Def.'s Opp'n).

[3] (D.E. 78, Pl.'s Reply).

[4] Fed. R. Civ. P. 78.

I.   **BACKGROUND AND PROCEDURAL HISTORY**[5]

Terrence Bradley ("Mr. Bradley"), now deceased, filed the original Complaint in this case on April 10, 2015 as a *pro se* plaintiff.[6] The Complaint asserted a malicious prosecution claim under 42 U.S.C. § 1983 against Alex Rodriguez ("Mr. Rodriguez") in both his individual and official capacities.[7] After a required *sua sponte* screening, the District Court issued an Order on May 7, 2015, which allowed Mr. Bradley to proceed with his individual capacity claim, but dismissed the official capacity claim.[8] The District Court, citing *Monell*, noted that, "[a] suit against a police officer in his official capacity represents only an alternative means by which to raise a claim against the entity of which the officer is an agent."[9] It then elaborated that since "a municipality, such as the City of Newark, may not be sued under a *respondeat superior* theory of liability under 42 U.S.C. § 1983, a plaintiff must establish that the municipality itself has committed a violation of federal law."[10] Again citing *Monell*, the District Court further explained that "to plead a claim for relief against a municipality under § 1983, a plaintiff must show that the municipality implemented a policy, ordinance, regulation, or custom which caused the deprivation of that plaintiff's rights."[11] Finally, the District Court concluded that, "Plaintiff has not pled that

---

[5] The allegations set forth within the pleadings and motion record are relied upon for purposes of this motion only. The Court has made no findings as to the veracity of the parties' allegations.

[6] (D.E. 1, Compl.).

[7] *Id.*; (D.E. 5, Order, May 7, 2015, 1).

[8] (D.E. 5, Order, May 7, 2015, 1).

[9] *Id.* (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978)).

[10] *Id.* (citing *Los Angeles Cnty. v. Humphries*, 562 U.S. 29, 35-36 (2010)).

[11] (D.E. 5, Order, May 7, 2015, 2) (citing *Humphries*, 562 U.S. at 35-36 and *Monell,* 436 U.S. at 690-91).

there was a municipal custom, policy, or ordinance which resulted in the alleged malicious prosecution by Defendant, and thus has not pled a proper *Monell* claim against the municipality (the City of Newark) of which Defendant is an agent."[12] On June 8, 2015, Mr. Bradley filed an Amended Complaint, which asserted only the individual capacity claim against Mr. Rodriguez.[13] After a delay due to Mr. Bradley having served the wrong person and failing to serve Mr. Rodriquez,[14] Mr. Rodriquez filed a motion to dismiss on April 13, 2016,[15] which was denied.[16]

On November 10, 2016, the Court entered a Scheduling Order, which set a discovery end date of May 12, 2017, and a deadline for seeking leave to amend of March 10, 2017.[17] The Scheduling Order also stated that interrogatories and document requests were to be served by December 9, 2016.[18] On December 8, 2016, Mr. Bradley asked for an extension of time to serve his documents requests,[19] which the Court granted.[20] After the Court granted that extention, there

---

[12] (D.E. 5, Order, May 7, 2015, 2).

[13] (D.E. 9, Am. Compl.).

[14] (D.E. 18); (D.E. 24-3, Sec. Mot. to Vacate, Def.'s Cert., ¶¶ 3-4).

[15] (D.E. 26, Mot. to Dismiss).

[16] (D.E. 35, Order, Aug. 1, 2016).

[17] (D.E. 43, Sched. Order, Nov. 10, 2016).

[18] *Id.*

[19] (D.E. 46, Pl.'s Ltr., Dec. 8, 2016).

[20] (D.E. 47, Order, Dec. 14, 2016).

3

was no further activity on the docket until April 7, 2017, when the Court issued an order scheduling a video conference.[21] This order was returned to the Court as undeliverable on May 8, 2017.[22]

On May 11, 2017, defense counsel submitted a letter requesting leave to file a motion to dismiss for Mr. Bradley's failure to provide discovery.[23] The letter stated, among other things, that Mr. Bradley had not responded to interrogatories or document requests, that he failed to appear twice for depositions, and that he was no longer incarcerated.[24] The letter notified the Court of Mr. Bradley's new address, something Mr. Bradley failed to do in violation of this District's local rules.[25] (Mr. Bradley had previously filed three notices of changes to his address in this case.[26]) The letter also conceded that the defense had served its document requests and interrogatories at the end of February, approximately two months after the December 19, 2016 deadline.[27]

On May 12, 2017, the Court issued an order to show cause to Mr. Bradley for his failure to notify the Court of his change in address.[28] The order set a status conference for June 5, 2017, and directed Mr. Bradley to file papers by May 29, 2017, showing good cause why the case should not

---

[21] (D.E. 48, Order, Apr. 7, 2017).

[22] (D.E. 49).

[23] (D.E. 50, Def.'s Ltr., May 11, 2017).

[24] *Id.*

[25] *Id.*; L. Civ. R. 10.1(a) ("Counsel and/or unrepresented parties must advise the Court of any change in their or their client's address within seven days of being apprised of such change by filing a notice of said change with the Clerk.")

[26] (D.E. 4; D.E. 17; D.E. 19).

[27] (D.E. 50, Def.'s Ltr., May 11, 2017).

[28] (D.E. 51, Order, May 12, 2017).

4

be dismissed.[29] Mr. Bradley did not file any papers showing good cause. He did, however, appear for the conference on June 5, 2017, and on that day the Court received a letter from him responding to defense counsel's May 11, 2017 letter.[30] Mr. Bradley's letter pointed out that Mr. Rodriguez only responded to Mr. Bradley's December 9, 2016 document request on April 12, 2017, and that Mr. Rodriguez did not serve any document requests or interrogatories until February 24, 2017, as defense counsel conceded in its May 11, 2017 letter.[31] Mr. Bradley's letter also stated that he had "communications problems [sic]" in scheduling a despotion with defense counsel and in otherwise coordinating with defense counsel, but he did not discuss his own failure to respond to discovery requests or to notify the Court of his change in address.[32]

The Court discussed a variety of issues with the parties during the June 5, 2017 conference.[33] In response to the Court's inquiry as to why he failed to notify the Court of his change in address, Mr. Bradley claimed that when he was released from prison on December 21, 2016, he had left a letter regarding his change in address with a guard at the prison who was to send it to the Court.[34] In response to the Court's question as to why he failed to respond to the order to show cause, Mr. Bradley said that he thought his letter regarding discovery that the Court received that day fulfilled his obligaitons in that regard.[35] The Court also discussed the discovery

---

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] (D.E. 52, Oral Arg., June 5, 2017).

[34] *Id.*

[35] *Id.*

5

disputes with the parties, and ultimately ordered both sides to respond to the overdue discovery requests within fourteen days.[36] During a conversation over the relevance of certain personnel reports that Mr. Bradley was seeking, the Court at one point distinguished between a claim against an officer as an individual and a claim against a city or a police department, specifically referring to the latter as a *Monell* claim.[37] Mr. Bradley also indicated during the conference that he was aware of a consent decree between the Department of Justice ("DOJ") and the City of Newark relating to unconstitutional practices by the City's police department.[38] At no point during the conference (nor in any submission prior to it) did Mr. Bradley mention a desire to amend the complaint or to bring a claim against the City of Newark or the Newark Police Department.[39] He did discuss the possibility of acquiring counsel.[40] In the Supplemental Scheduling Order issued after the conference, the Court extended the discovery deadline until August 7, 2017.[41]

There was no further activity on the docket until current Plaintiff's counsel entered an appearance on August 3, 2017.[42] The next day he filed a letter which requested an extension to the discovery deadline, advised of a potential desire to amend the complaint, and conceded that Mr.

---

[36] (D.E. 52, Supp. Sched. Order, June 5, 2017).

[37] (D.E. 52, Oral Arg., June 5, 2017).

[38] *Id.*

[39] *Id.*

[40] *Id.*

[41] (D.E. 52, Supp. Sched. Order, June 5, 2017).

[42] (D.E. 53, Notice of Appearance).

6

Bradley had still not responded to Mr. Rodriquez's first set of interrogatories.[43] After a status conference a few days later, the Court issued another Supplemental Scheduling Order, which extended the discovery deadline until November 7, 2017, and again ordered Mr. Bradley to respond to overdue discovery requests within fourteen days.[44] After a telephone conference on September 25, 2017, the Court extended the discovery deadline solely for purposes of depositions until December 7, 2017.[45]

On November 9, 2017, Plaintiff's counsel submitted a letter notifying the Court and defense counsel of Mr. Bradley's death.[46] After two more conferences, the Court set a date for the filing of both the present motion and Mr. Rodriquez's pending motion for summary judgment, which were both filed on December 29, 2017.[47] The Court heard oral argument for the motion seeking leave to amend on February 13, 2018.[48] The proposed amendment seeks to add the City of Newark and the Newark Police Department as defendants in the action, and to add five more counts to the single malicious prosecution count pled in the operative Amended Complaint, including four counts of federal civil rights violations and one count of a New Jersey constitutional

---

[43] (D.E. 57, Pl.'s Ltr., Aug. 4, 2017).

[44] (D.E. 58, Supp. Sched. Order, Aug. 7, 2017).

[45] (D.E. 62, Order, Sept. 25, 2017).

[46] (D.E. 63, Pl.'s Ltr., Nov. 9, 2017).

[47] (D.E. 67, Order, Nov. 28, 2017); (D.E. 70, Mot. for Summ. J.); (D.E. 71, Mot. to Am.).

[48] Fed. R. Civ. P. 78.

violation.⁴⁹ (On February 9, 2017, Plaintiff's counsel filed a motion for extension of time to file a motion to substitute a party for the now-deceased Mr. Bradley.⁵⁰)

## II. MAGISTRATE JUDGE AUTHORITY

Magistrate judges are authorized to decide any non-dispositive motion designated by the Court.⁵¹ This District has specified that magistrate judges may determine any non-dispositive pre-trial motion.⁵² Motions to amend are non-dispositive.⁵³ Decisions by magistrate judges must be upheld unless "clearly erroneous or contrary to law."⁵⁴

## III. DISCUSSION & ANALYSIS

### A. Rule 16 "Good Cause" Analysis

"Where deadlines for amending pleadings are the subject of a scheduling order and the deadlines have passed, the moving party must meet Rule 16's good cause standard in order to amend."⁵⁵ What will constitute "good cause" to warrant modification "necessarily varies with the

---

⁴⁹ (D.E. 71-3, Mot. to Am., Proposed Am. Compl.).

⁵⁰ (D.E. 81, Pl.'s Mot.).
⁵¹ 28 U.S.C. § 636(b)(1)(A).

⁵² L. Civ. R. 72.1(a)(1).

⁵³ *Continental Cas. Co. v. Dominick D'Andrea, Inc.*, 150 F.3d 245, 251 (3rd Cir. 1998) (internal citations omitted).

⁵⁴ 28 U.S.C. § 636(b)(1)(A).

⁵⁵ *See Stallings ex rel. Estate of Stallings v. IBM Corp.*, No. 08-3121, 2009 WL 2905471, at *16 (D.N.J. Sept. 8, 2009) (citing *Eastern Minerals & Chemicals Co. v. Mahan*, 225 F.3d 330, 340 (3rd Cir. 2000)).

circumstances of each case,"[56] and the Court has discretion to determine what kind of showing a party must make to satisfy the good cause requirement.[57] Whether good cause exists largely depends on the diligence of the moving party.[58] "[A] party is presumptively not diligent if, at the commencement of the lawsuit, the party knows or is in possession of the information that is the basis for that party's later motion to amend."[59] "[W]hile *pro se* litigants in general deserve more lenient treatment than those represented by counsel, all litigants, including pro ses, have an obligation to comply with Court orders. When they flout that obligation, they, like all litigants, must suffer the consequences of their actions."[60]

The Court first addresses Plaintiff's argument that Rule 16 should not apply because the discovery deadline has been extended three times.[61] Plaintiff argues, quoting *In re: L'Oreal*, that "'it would be illogical to hold Plaintiff[] to an amendment deadline date in a scheduling order that long ago went stale.'"[62] However, discovery deadlines are often extended without a corresponding

---

[56] *High 5 Games, LLC v. Marks*, No. 13-7161, 2017 WL 349375, at *2 n.2 (D.N.J. Jan. 24, 2017) (citing 6A Alan Wright et al., Federal Practice & Procedure § 1522.2, at 313 (3d ed. 2010)).

[57] *See Phillips v. Greben,* No. 04–5590, 2006 WL 3069475, at *6 (D.N.J. Oct. 27, 2006) (internal quotations omitted); *Thoman v. Philips Med. Sys.*, No. 04-3698, 2007 WL 203943, at *10 (D.N.J. Jan. 24, 2007) (citing 3 James W. Moore et al., Moore's Federal Practice § 16.14[1] [b] (3d ed.1997)).

[58] *Phillips*, 2006 WL 3069475, at *6 (D.N.J. Oct. 27, 2006) (citing *Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 469 (D.N.J. 1990)).

[59] *Chancellor v. Pottsgrove Sch. Dist.*, 501 F. Supp. 2d 695, 702 (E.D. Pa. 2007) (citing *S&W Enters., L.L.C. v. Southtrust Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir. 2003)).

[60] *Burns v. Glick*, 158 F.R.D. 354, 356 (E.D. Pa. 1994) (citation and internal brackets and quotation marks omitted); *see also id.* ("[I]t was incumbent upon [*pro se* plaintiff] personally to ensure that the litigation proceeded in accordance with the scheduling order.").

[61] (D.E. 71-1, Mot. to Am., Pl.'s Br., 13).

[62] *Id.* (quoting *In re: L'Oreal Wrinkle Cream Mktg. Practices Litig.*, 2015 WL 5770202, at *3 (D.N.J. Sept. 30, 2015)).

extension to the amendment deadline. When the Court extended the discovery deadlines in this case, it never indicated or implied that the unchanged portions of the scheduling order were no longer applicable or "stale." A particular amendment to a scheduling order does not render inoperative the remainder of the scheduling order. Moreover, Mr. Bradley did not mention a desire to amend his pleading at any time until present Plaintiff's counsel's letter of August 4, 2017, just under five months after the deadline had passed.[63]

Of course, it is possible in certain circumstances that a court officially extends only the discovery deadline, but practically intended to extend the amendment deadline as well, and later recognizes such an intention by not requiring the party seeking leave to amend to meet the Rule 16 standard. That seems to have been the situation in *In re: L'Oreal*. But that case is far afield from this case. *In re: L'Oreal* was a multidistrict class action with twenty-six alleged counts in which "[e]very issue [was] fought tooth and nail[.]"[64] The court there reflected that, "[s]imply put, this is a scorched earth litigation battle with no party giving quarter on almost any issue. Thus, progress has been slow. Despite a discovery period of more than a year, the parties agree that many additional months of discovery will be needed, and that does not account for expert discovery and motion practice. The reality is the case is still in the somewhat early stages and much remains to be accomplished."[65] By contrast, this is a case in which a single plaintiff has alleged one count against a single defendant,[66] there has been only one (informal) discovery dispute, and there is

---

[63] (D.E. 57, Pl.'s Ltr., Aug. 4, 2017).

[64] *In re: L'Oreal Wrinkle Cream Mktg. Practices Litig.*, 2015 WL 5770202, at *1.

[65] *Id.*

[66] (D.E. 9, Am. Compl.).

10

currently a summary judgment motion pending.[67] This case more closely resembles *Prime Ins. Syndicate v. United Risk Mgmt. Servs., Inc.,* where then-Magistrate Judge Shwartz thrice extended the discovery deadline without extending the amendment deadline, and then held that the plaintiff was required to show good cause under Rule 16 in order to amend the complaint after the amendment deadline passed (and that the plaintiff failed to do so).[68] The district court upheld that decision.[69] Similarly, though the Court here extended the discovery deadline three times, it never extended the amendment deadline, which expired approximately five months before Plaintiff evinced any desire to amend the complaint. Therefore, Plaintiff must show good cause under Rule 16.

The Court finds that Plaintiff has not demonstrated good cause for his failure to comply with the scheduling order deadline of March 10, 2017 for seeking leave to file a motion to amend the Complaint. Plaintiff's counsel acknowledges that "[t]he most common basis for finding a lack of good cause is the party's knowledge of a potential claim before the deadline to amend has passed[,]"[70] but claims that "Plaintiff was unaware of his potential *Monell* claim until he retained counsel in August 2017."[71] As noted above, however, the District Court explicitly discussed *Monell* in its screening opinion, and included a description of what a plaintiff is required to plead

---

[67] (D.E. 70, Def.'s Mot. Summ. J.).

[68] 2006 WL 2085388, at *1 (D.N.J. July 25, 2006).

[69] *Id.*, at *4.

[70] (D.E. 71-1, Mot. to Am., Pl.'s Br., 15) (citing *Stallings ex rel. Estate of Stallings v. IBM Corp.*, 2009 U.S. Dist. LEXIS 81963, at *16 (D.N.J. Sept. 8, 2009)).

[71] (D.E. 71-1, Mot. to Am., Pl.'s Br., 15).

11

in order to establish a *Monell* claim.[72] Mr. Bradley undoubtedly read and understood that opinion, as he filed the operative Amended Complaint in line with that opinion's holding that only the individual capacity claim was to proceed against Mr. Rodriquez.[73] Mr. Bradley, therefore, was indeed aware of a potential *Monell* claim in the first half of 2015, over two years before counsel claims he informed Mr. Bradley of such a potential claim. Even were the Court were to assume that in order to be aware of his potential *Monell* claim, Mr. Bradley needed to be aware of the March 2016 consent decree between the City of Newark and the DOJ mentioned in Plaintiff's reply, that decree was announced publically eight months before the Scheduling Order was issued and almost a year before the amendment deadline.[74] Mr. Bradley also mentioned the decree during his June 2017 appearance before the Court, which was approximately two months before his contact with present counsel.[75] These facts undermine Plaintiff's counsel claim that, "Plaintiff was unaware of his potential *Monell* claim until he retained counsel in August 2017."[76]

The Court also finds that Mr. Bradley has not been diligent. Plaintiff's counsel claims that Mr. Bradley "continuously exercised reasonable diligence throughout the course of these proceedings,"[77] but that is contradicted by the record. Mr. Bradley got out of prison on December

---

[72] *See supra* nn. 9-12 and accompanying text.

[73] (D.E. 9, Am. Compl.).

[74] (D.E. 78, Pl.'s Reply, 6). Plaintiff's counsel confuses his dates in this portion of his argument, claiming that the March 30, 2016 consent decree came after the amendment deadline of "March 10, 2016," when the actual deadline was March 10, 2017.

[75] (D.E. 52, Oral Arg., June 5, 2017).

[76] (D.E. 71-1, Mot. to Am., Pl.'s Br., 15).

[77] (D.E. 71-1, Mot. to Am, Pl.'s Br, 13).

12

21, 2016, and failed to inform the Court of that change in address.[78] Even if it were true that he left a note with a prison guard, that is not an exercise in reasonable diligence. Instead, it would have been diligent for Mr. Bradley to have mailed that notice himself given that he was being freed from incarceration. Mr. Bradley made no contact with the Court between December 8, 2016 and his appearance on June 5, 2017 (despite being required to do so at least twice – once in order to update his address and another to file papers showing good cause[79]). Furthermore, though it is true that Mr. Rodriquez was not timely with his discovery demands and responses, Mr. Bradley was also dilatory in his responses to discovery requests.[80] On August 4, 2017, Plaintiff's counsel conceded that Mr. Bradley had still not produced discovery that was ordered to be produced by June 19, 2017.[81] Mr. Bradley also never raised any issue regarding Mr. Rodriguez's dilatoriness, despite having the instructions for doing so in the Scheduling Order,[82] until after the Court ordered Mr. Bradley's appearance on June 5, 2017. Mr. Bradley had two-and-a-half months between his release from prison and the amendment deadline, and he did not once engage with the Court from the time of his release until his appearance almost three months after the amendment deadline. He first raised the issue of amending his pleading two months after that appearance, in the very same submission in which he conceded he had not provided discovery that the Court had previously

---

[78] (D.E. 52, Oral Arg., June 5, 2017).

[79] (D.E. 51, Order, May 12, 2017).

[80] (D.E. 50, Def.'s Ltr., May 11, 2017).

[81] (D.E. 57, Pl.'s Ltr., Aug. 4, 2017) ("Plaintiff acknowledges that his responses to defendant's first set of interrogatories remain outstanding[.]"); (D.E. 52, Order, June 5, 2017) ("Each party is to respond to overdue discovery requests within 14 days.").

[82] (D.E. 43, Sched. Order, Nov. 10, 2017).

13

ordered produced.⁸³ For these reasons, Mr. Bradley did not excercise the necessary diligence to demonstrate good cause under Rule 16 for his failure to seek amendment until five months after the amendment deadline.⁸⁴

Because Mr. Bradley was aware of a potential *Monell* claim long before the amendment deadline passed, and because he was not diligent, he cannot meet Rule 16's good cause standard. Though this renders Rule 15 analysis unnecessary, the Court will nonetheless briefly address Rule 15 to demonstrate that Mr. Bradley would fail to meet that standard as well.

B.  **Rule 15 Analysis**

"[A] party may amend its pleading only with the opposing party's written consent or the court's leave."⁸⁵ The decision to grant or deny leave to amend is "committed to the sound

---

⁸³ (D.E. 57, Pl.'s Ltr., Aug. 4, 2017).

⁸⁴ In his argument regarding diligence, Plaintiff's counsel makes much of the fact that Mr. Bradley asked three times for the appointment of *pro bono* counsel. (*See* D.E. 71-1, Mot. to Am., Pl.'s Br., 10; D.E. 78, Reply, 3-4). However, civil litigants possess neither a constitutional nor a statutory right to appointed counsel, *Montgomery v. Pinchak*, 294 F.3d 492, 498 (3d Cir. 2002), and a court must "take note of the significant practical restraints on the district courts' ability to appoint counsel[.]" *Tabron v. Grace*, 6 F.3d 147, 157 (3d Cir. 1993). In denying Mr. Bradley's first request, the Court discussed the relevant factors and noted that Mr. Bradley's "filings with the Court thus far reflect a general understanding of the litigation process" and that "without the aid of counsel, [Mr. Bradley] provided a detailed report of the facts and showed familiarity with the nature of his legal claims." (D.E. 14, Order, July 28, 2015, 1). The Court also noted that "the legal issues at this juncture of the case do not appear to be particularly difficult or complex, and they do not present any novel issues of law[,]" but rather "relate to standard civil rights allegations[,]" and that expert testimony would likely not be necessary. (D.E. 14, Order, July 28, 2015, 2-3). Mr. Bradley's second request consisted of a single sentence without any discussion of the factors the Court discussed in its denial, (D.E. 29, Pl.'s Ltr., May 3, 2016), and his third request, (D.E. 38, Pl.'s Mot., Oct. 13, 2016), was "substantially identical to his first request." (D.E. 41, Order, Nov. 2, 2016). Due to their summary nature, the second and third requests do not represent any particular diligence on Mr. Bradley's part.

⁸⁵ Fed. R. Civ. P. 15(a)(2).

discretion of the district court."[86] While courts have broad discretion to decide motions to amend, they are to "heed Rule 15(a)'s mandate that amendments are to be granted freely in the interests of justice."[87] This ensures that "a particular claim will be decided on the merits rather than on technicalities."[88] In the absence of unfair prejudice, futility of amendment, undue delay, bad faith, or dilatory motive, the court must grant a request for leave to amend.[89] "Prejudice may result from an amendment where a party has to change 'tactics or case theories' because of the new claims."[90] "Prejudice may also result where the amendment will require the re-opening of discovery, would delay resolution of the matter, or would unnecessarily increase the cost of litigation."[91]

As discussed, the operative Amended Complaint alleges a single count of malicious prosecution against an individual defendant.[92] The proposed amendment seeks to add two governmental defendants and five additional counts.[93] The proposed amendment, therefore, would vastly expand the scope of this case. Plaintiff claims that "any additional discovery would be extremely limited in scope[,]"[94] but it is doubtful that hypothetical counsel for the proposed

---

[86] *Arab African Int'l Bank v. Epstein*, 10 F.3d 168, 174 (3d Cir. 1993).

[87] *Voilas et al. v. General Motors Corp., et al.*, 173 F.R.D. 389, 396 (D.N.J. 1997) (internal citations and quotations omitted); Fed. R. Civ. P. 15(a)(2).

[88] *Dole v. Arco Chem. Co.,* 921 F.2d 484, 487 (3d Cir. 1990) (internal citation omitted).

[89] *Grayson v. Mayview State Hosp.,* 292 F.3d 103, 108 (3d Cir. 2002).

[90] *Stallings*, 2009 WL 2905471, at *17 (*citing Kiser v. Gen. Elec. Corp.*, 831 F.2d 423, 428 (3rd Cir. 1987)).

[91] *Stallings*, 2009 WL 2905471, at *17.

[92] (D.E. 9, Am. Compl.).

[93] (See D.E. 71-3, Mot. to Am., Proposed Am. Compl.).

[94] (D.E. 71-1, Mot. to Am., Pl.'s Br., 18).

defendants would agree, and given that Mr. Bradley has died and will not be available for any further deposition or cross examination, the prejudice would be particularly unfair. Furthermore, the amendment would unquestionably delay resolution of the matter. As Plaintiff rightly concedes, "the matter is extremely old and further delay may place an unwarranted burden on the Court[.]"[95]

For these reasons, Plaintiff fails to meet the Rule 15 standard for amendment.

## IV. CONCLUSION

Since Plaintiff has not demonstrated good cause under Rule 16 nor met the Rule 15 standard, his motion for leave to amend is **denied**.

An appropriate Order follows.

### ORDER

**IT IS** on this Wednesday, February 28, 2018,

**ORDERED** that Plaintiff's motion for leave to amend the Complaint is **DENIED**.

Honorable Steve Mannion, U.S.M.J.
United States District Court,
for the District of New Jersey
phone: 973-645-3827

2/28/2018 1:15:04 PM

Original: Clerk of the Court
Hon. Susan D. Wigenton, U.S.D.J.
cc: All parties
　File

---

[95] (D.E. 71-1, Mot. to Am., Pl.'s Br., 19).

16