UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

TERRENCE BRADLEY,

        Plaintiff,

v.

DETECTIVE ALEX RODRIGUEZ,

        Defendants.

Civil Action No. 15-2603 (SDW)

OPINION

**WIGENTON**, District Judge:

Presently before the Court is Defendant Alex Rodriguez's motion for summary judgment. (ECF No. 70). Plaintiff filed a response to the motion (ECF No. 79), to which Defendant has replied. (ECF No. 82). For the following reasons, Defendant's motion for summary judgment is granted.

**I. BACKGROUND**

In his operative amended complaint, Plaintiff presents a single claim – that Defendant falsely implemented criminal charges against him, and thereby violated his Fourth Amendment rights by engaging in malicious prosecution resulting in liability pursuant to 42 U.S.C. § 1983. (*See* ECF No. 9). Plaintiff's claims arise out of an event which occurred at 72 Hayes Street in Newark on May 8, 2011. (*See* Document 2 attached to ECF No. 79 at 51). According to Plaintiff, he arrived at the apartment building in question at approximately 9:45 p.m., to visit a friend who lived in the building. (*Id.* at 50-52). While climbing the stairwell to his friend's apartment, Plaintiff came across two men conversing on the stairs near the third floor – Al-Sharif

1

Metz and Christopher Lucas. (*Id.* at 50). While Plaintiff had known Metz "since [he was] a kid," Plaintiff had apparently only recently met Lucas. (*Id.*). According to Plaintiff, he said hello to the two men and walked up some stairs to continue on his way when he heard a voice from behind him tell the three of them to show him their hands. (*Id.* at 53-54). According to Plaintiff, this voice came from below Plaintiff from an individual Plaintiff had not yet seen. (*Id.*). According to Plaintiff, he believed that the voice belonged to someone seeking to rob him, and he thus ran up the stairs to the fifth floor. (*Id.*). While running on the fifth floor, Plaintiff turned and saw "a man with a hoodie on with a gun out" and continued to run despite the man telling him to stop. (*Id.*).

Plaintiff testified that, at the time, he was unaware that the man telling him to stop was Newark Police Officer and Defendant Alex Rodriguez. (*Id.*). According to Defendant and his three fellow officers who were with him that night – Officers Ramirez, Rosa, and Sheppard – the four police officers had arrived at 72 Hayes Street to check the building for drug dealing and other crimes shortly before. (*See* Document 4 attached to ECF No. 79 at 10-11). Upon their arrival, Defendant and Sheppard walked up one of the stairwells – the same one in which Plaintiff encountered Metz and Lucas – while Ramirez and Rosa remained in the courtyard with the intention to eventually enter the building through the other stairwell. (*Id.* at 11). According to Defendant, he and Sheppard came upon Plaintiff, Metz, and Lucas near the third floor. (*Id.* at 14). Defendant testified at his deposition that when he and Sheppard reached the third floor landing, they encountered Metz, who was a known gang member, with Lucas slightly higher up the stairs and Plaintiff further up the stairs still, close to the landing between the third and fourth floors. (*Id.* at 14-15). Both Lucas and Plaintiff apparently had their hands in their pockets. (*Id.*

2

at 15). Although the officers could not tell what was being discussed, Defendant also testified the men were engaged in conversation when the officers arrived. (*Id.* at 14-15). Although Plaintiff testified that he never heard Defendant identify himself (Document No. 2 attached to ECF No. 79 at 53-55), Defendant stated that he identified himself as a police officer and then instructed the men to show him their hands. (Document No. 4 attached to ECF No. 79 at 15). Defendant testified that Plaintiff was facing him when he told them to show their hands, but Plaintiff did not show his hands despite repeated instructions to do so. (*Id.* at 16).

Both Plaintiff and Defendant agree that Plaintiff then fled to the fifth floor. (*Id.* at 18-19). While Defendant was chasing Plaintiff on the fifth floor, both men testified at various times that Plaintiff either threw or dropped[1] an item that had been in his pocket over the railing and into the courtyard below. (*Id.* at 24; Document 2 attached to ECF No. 79 at 55-56). While Plaintiff claims that the object he threw or dropped over the railing was a Blackberry cellphone (Document 2 attached to ECF No. 79 at 55-56), the officers have testified in various hearings and during their depositions that the object was instead a handgun. (*See, e.g.,* Document 4 attached to ECF No. 79 at 27-29). It is not clear from the record how certain Defendant was that what Plaintiff had thrown or dropped was a weapon at the time the object went over the railing – Defendant has testified at times that he thought or was pretty sure that it was a weapon, and at others that he was certain that it was. (*See, e.g., Id.* at 27; Document 3 attached to ECF No. 79 at 17, 31-32). Both of the officers who were in the courtyard, however, testified both at Plaintiff's trial and in later

---

[1] At his deposition, Plaintiff testified that his phone "flew" over the railing from within his hand in his pocket, while he previously testified during his parole revocation hearing that he purposefully threw the phone over the railing to prevent the images saved on the phone from being stolen. (Document 2 attached to ECF No. 79 at 55-56; Document 3 attached to ECF No. 79 at 125-26).

3

depositions that they saw the object as it was thrown, saw where it landed, and saw that it was a handgun when they used their flashlights upon it. (*See* Document 3 attached to ECF No. 79 at 185; Document 5 attached to ECF No. 79 at 72). While Officer Ramirez ran into the building to aid Defendant after the gun landed, Officer Rosa remained with the weapon until the crime scene unit arrived to photograph and take custody of the gun. (Document 5 attached to ECF No. 79 at 72-73).

In any event, Defendant continued to chase Plaintiff until he began to descend the other staircase towards the third floor, at which point Plaintiff encountered Officer Ramirez, who had come to back up Defendant. (Document No. 4 attached to ECF No. 79 at 27). According to Plaintiff, Ramirez identified himself and ordered Plaintiff to get down on the ground. (Document 2 attached to ECF No. 79 at 55). Defendant and Ramirez, however, testified that Ramirez had to grab or tackle Plaintiff and take him to the ground to arrest him. (Document 4 attached to ECF No. 79 at 27; Document 3 attached to ECF No. 79 at 189). While he was being taken into custody, Plaintiff claims that Defendant told him he "had something for [him] for running," which Plaintiff took to be a threat. (Document 2 attached to ECF No. 79 at 57). Plaintiff was thereafter taken into custody, handcuffed, and taken down to the courtyard, where he was eventually questioned regarding drugs and a weapon. He denied having any knowledge about either, but Plaintiff did tell the officers that he was on parole and probation at the time. (*Id.*)

Plaintiff testified that he remained in the courtyard area awaiting transport to the police station for about twenty to twenty five minutes. (*Id.*). Plaintiff further stated that he did not see anything on the ground in the courtyard, nor did he recall seeing any of the officers find a weapon while he was in the courtyard following his arrest, although he did see an officer "looking around."

4

(*Id.* at 58). Plaintiff qualified that statement, however, by stating that he was "exhausted, . . . couldn't breathe really that much, [and] had a leg injury" and was thus somewhat distracted and did not recall anyone finding a gun. (*Id.*). This is perhaps not surprising, however – as previously explained, the officers testified they had located the handgun prior to Plaintiff being arrested in the third floor stairwell. Although Plaintiff testified at his deposition[2] that he believed the weapon must have been "plant[ed]" or "stage[d]" because he claimed he did not have a weapon on his person and thus couldn't have been the source of the weapon, he also testified that he did not see anyone plant the weapon at the scene that night. (Document 2 attached to ECF No. 79 at 68).

According to the officers, a crime scene unit officer later arrived on the scene, collected the handgun, and took it into police custody. The crime scene officer also took two pictures of the gun. (*See* Document 3 attached to ECF No. 70 at 79-81). In one of the pictures, the weapon appears to be a dark grey or black metallic colored gun with a brown wooden handle wrapped in grey duct tape. (*Id.* at 79). In the other, the main body of the gun appears to be a dirty metallic dark grey in color. (*Id.* at 81). The difference in color between the two photos appears to be a result of the weapon having been turned over to show the opposite side and brighter lighting when the second photo was taken. (*Id.* at 79-81). After being cleaned by ballistics officers, the weapon's finish was described by ballistics as being "stainless steel," and the weapon apparently appeared to be steel-grey in color, rather than the black or grey seen in the photograph, during trial.

---

[2] Because Plaintiff died during the pendency of this matter, Plaintiff's testimony is essentially limited to the statements he made during his deposition and at his parole hearings. Even if this matter were permitted to go to trial, Plaintiff could not add additional information or flesh out his apparently bald assertion of fabrication.

(*See* Document 5 attached to ECF No. 79 at 64; Document 4 attached to ECF no. 79 at 293). According to the officers, and visible in one of the two pictures, some writing – possibly a serial number – had been filed off of the slide of the gun, leading the officers to believe that the serial number had been obliterated. (Document 3 attached to ECF No. 70 at 79; *see also* Document 5 attached to ECF No. 79 at 60-62). However, Police ballistics officers were later able to identify a serial number on the bottom of the weapon after the duct tape was removed. (*See, e.g.,* Document 4 attached to ECF no. 79 at 293).

Following Plaintiff's arrest, he was ultimately charged and indicted for offenses including unlawful possession of a weapon and certain persons not to possess weapons. (*See Id.* at 81). Because the state chose to first try Petitioner on the certain persons offense, which required proof that Plaintiff had prior felony convictions, the state elected to drop the other charges as state procedural rules prevented the state from pursuing the other charges if they were not tried prior to the certain persons offense. (*Id.*). Following trial, Plaintiff was acquitted.

At trial and at parole revocation hearings,[3] Defendant gave testimony which differed as to minor details regarding the events leading up to Plaintiff's arrest. As previously noted, Defendant testified to varying levels of certainty as to whether he knew the item dropped or thrown by Plaintiff was a weapon when Plaintiff discarded it. Defendant provided varying testimony as to the weapon itself - although he most frequently referred to the weapon as a dark or black colored

---

[3] Plaintiff's parole was ultimately revoked both for possession of a weapon in violation of his parole terms and for being found in the company of gang members, which he was also prohibited from doing under the terms of his parole. Having reviewed the transcripts of those proceedings, absent the inconsistencies as to the gun itself – whether it was a revolver or not, whether Defendant knew it was a gun when Plaintiff discarded an object over the railing – and a few other minor issues, Plaintiff and Defendant's testimony at the two parole hearings largely mirrors that given at Plaintiff's trial and in depositions. (*See, e.g.,* Document 3 attached to ECF No. 79 at 3-167).

handgun. On at least one instance, Defendant testified that the recovered weapon was a revolver, which he clarified was a mistake. (*See, e.g., Id.* at 151). There was also some conflicting testimony at trial as to whether Defendant, in rendering the weapon safe prior to it being taken into custody by crime scene officers, ejected the magazine inside of the weapon, or if the magazine was removed for the first time when ballistics removed the duct tape around the handle of the weapon. (*See* Document 6 attached to ECF No. 79 at 47). While the ballistics officer testified to having removed duct tape to extract the magazine from the weapon and check for the serial number on the butt of the gun, (*see* Document 4 attached to ECF no. 79 at 293), Officer Rosa testified that he saw Defendant remove the magazine from the weapon and unload the weapon at the scene to render it safe. (Document 6 attached to ECF No. 79 at 47). This particular inconsistency was also the subject of a jury question, indicating that the jury may have found this conflicting testimony relevant to their acquittal of Plaintiff. (*Id.* at 102-09).

The final factual issue that arose at Plaintiff's trial, which has been emphasized by Plaintiff in this matter, is a chain of custody report which was apparently prepared by the crime scene and evidence officers who took the weapon from 72 Hayes Street but did not participate in Plaintiff's arrest. While Plaintiff was arrested on May 8, 2011, at approximately 9:45-10:00 p.m., the custody report for the gun lists the offense date as "04/08/11 – 21:00 Hrs," but lists the correct discovery site – 72 Hayes Street. (Document 6 attached to ECF No. 79 at 2). The report, however, lists the first event date for the weapon as occurring on May 9, 2011, when the weapon was taken to ballistics at 8:08 a.m. (*Id.*). The same date – May 9, 2011 – is listed on the ballistics report for when the weapon was delivered to the lab. (*See* Document 5 attached to ECF No. 79 at 64). It thus appears that the April date and 9:00 p.m. offense time may have been a clerical

7

error. In any event, because Plaintiff did not testify at his criminal trial, Plaintiff's criminal trial counsel highlighted this report, and the inconsistencies in Defendant's testimony regarding the weapon, and between the ballistics officer and Officer Rosa to argue that the weapon had been fabricated by the police. (Document 6 attached to Document 79 at 75-80). While it is not clear whether the jury agreed with counsel, they did acquit Plaintiff after deliberations, leading to Plaintiff's complaint in this matter.

## II. DISCUSSION

### A. Legal Standard

Pursuant to Rule 56, a court should grant a motion for summary judgment where the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of "identifying those portions of the pleadings depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A factual dispute is material "if it bears on an essential element of the plaintiff's claim," and is genuine if "a reasonable jury could find in favor of the non-moving party." *Blunt v. Lower Merion School Dist.*, 767 F.3d 247, 265 (3d Cir. 2014). In deciding a motion for summary judgment a district court must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion," *Id.*, but "may not weigh the evience or assess credibility." *Goldenstein v. Repossessors, Inc.*, 815 F.3d 142, 146 (3d Cir. 2016) (quoting *MBIA Ins. Corp. v. Royal Indem. Co.,* 426 F.3d 204, 209 (3d Cir. 2005); *see also Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, [however,] there is no genuine issue for trial." *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also Goldenstein*, 815 F.3d at 146.

Once the moving party has met this initial burden, the burden shifts to the non-moving party who must provide evidence sufficient to establish that a reasonable jury could find in the non-moving party's favor to warrant the denial of a summary judgment motion. *Lawrence v. Nat'l Westminster Bank New Jersey*, 98 F.3d 61, 65 (3d Cir. 1996); *Serodio v. Rutgers*, 27 F. Supp. 3d 546, 550 (D.N.J. 2014). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial. However, the party opposing the motion for summary judgment cannot rest on mere allegations, instead it must present actual evidence that creates a genuine issue as to a material fact for trial." *Serodio*, 27 F. Supp. 3d at 550. "[W]here a non-moving party fails sufficiently to establish the existence of an essential element of its case on which it bears the burden of proof at trial, there is not a genuine dispute with respect to a material fact and thus the moving party is entitled to judgment as a matter of law." *Goldenstein*, 815 F.3d at 146 (quoting *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014)).

B. Analysis

Defendant chiefly argues in his motion that Plaintiff cannot make out a claim for malicious prosecution because Defendant possessed probable cause to support charging Plaintiff, and, as a result Plaintiff cannot establish malice sufficient to support his malicious prosecution claim.

9

Under § 1983, a Plaintiff establishes a claim for malicious prosecution by showing that

> (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in [the plaintiff's] favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered [a] deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Halsey v. Pfeiffer*, 750 F.3d 273, 296-97 (3d Cir. 2014).

"[P]robable cause . . . exists when the [totality of the] facts and circumstances within the [charging] officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been . . . committed by the person to be [charged]." *Goodwin v. Conway*, 836 F.3d 321, 327 (3d Cir. 2016). "[T]he evidentiary standard for probable cause is significantly lower than the standard which is required for a conviction," and it is "irrelevant in a probable cause inquiry" whether "a person is later acquitted of the crime" in question. *Halsey*, 750 F.3d at 299 (internal citations and quotations omitted). "While the question of probable cause is generally left to the jury, a court may conclude that probable cause exists as a matter of law 'if the evidence viewed most favorably to [the nonmoving party], reasonably would not support a contrary finding.'" *Id.* (quoting *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997)). In a malicious prosecution action under § 1983, "a grand jury indictment or presentment constitutes prima facie evidence of probable cause to prosecute," but "may be rebutted by evidence that the presentment was procured by fraud, perjury or other corrupt means." *Rose v. Bartle*, 871 F.2d 331, 353 (3d Cir. 1989); *see also Goodwin*, 836 F.3d at 329, 329 n. 35. "[O]fficers who conceal and misrepresent material facts[, however,] are not insulated from a § 1983 claim for malicious prosecution simply because the prosecutor [and] grand jury . . . act independently to facilitate

erroneous [indictments]." *Halsey*, 750 F.3d at 297.

The record provided by the parties in this matter establishes that Plaintiff, after being told to show his hands by a person he may not have known was a police officer, fled and began a foot chase through 72 Hayes Street. While fleeing, Plaintiff dropped or threw an object, which he contends was a cell phone, over the side railing of the fifth floor of the building, and that object fell into the courtyard below. Upon searching for that object immediately after its landing, the police apparently found a handgun which appeared to be dark in color and whose handle was wrapped in tape. Plaintiff was thereafter detained and arrested, at which point he admitted to being on parole and probation. These accepted facts Defendant's grand jury testimony led to Plaintiff being charged with, among other things, certain persons not to have weapons.

As explained at Plaintiff's criminal trial, a "certain persons" offense in New Jersey has essentially two elements – that the criminal defendant had previously been convicted of an enumerated offense, which includes any first degree crime, and that after that conviction he "purchase[d], own[ed], possess[ed], or control[ed] . . . a firearm." (*See* Document 6 attached to ECF No. 79 at 98-100). It does not appear to be in dispute that Plaintiff's prior conviction qualifies as an enumerated offense – Plaintiff himself admitted to having previously been convicted of aggravated manslaughter in the first degree during his deposition. (Document 2 attached to ECF No. 79 at 47). Plaintiff likewise testified that he told the officers he was on parole after his arrest. Thus, when the charges were initiated against Plaintiff, the Court can conclude that Defendant was aware of Plaintiff's prior conviction. The question of probable cause, then, rests entirely upon whether the facts known to Defendant would have reasonably supported the conclusion that Plaintiff possessed a weapon.

11

The facts, as outlined above, support such a conclusion. As this Court summarized, Plaintiff fled after being told to show his hands, tossed or dropped an object over the railing of 72 Hayes Street which Defendant believed may have been a weapon, and the officers on the ground in the courtyard did, indeed, find a weapon in the area where they saw the object land. Those facts – that Plaintiff appeared to throw an object over the railing and that a gun was found where the object landed – are more than sufficient to permit a reasonable officer to conclude that Plaintiff likely possessed the weapon found where the object he appeared to throw over the railing landed. Thus, Plaintiff's ability to show that Defendant lacked probable cause rests entirely on Plaintiff's contention that, because he did not possess a handgun on May 8, 2011, the gun must have been a fabrication perpetuated against him by Defendant because Plaintiff ran from him.

In *Halsey*, the Third Circuit held that the use of fabricated evidence by a police officer to institute charges against a criminal defendant will not only support a malicious prosecution claim, but will also serve as a stand-alone basis for relief under § 1983. *See* 750 F.3d at 290-300. In reaching that conclusion, however, the Court of Appeals cautioned trial courts hearing such claims against broadening the scope of that holding. 750 F.3d at 295. The *Halsey* panel specifically directed trial courts not to conclude evidence was fabricated merely because fabrication is alleged. It stated that "testimony that is incorrect or simply disputed should not be treated as fabricated merely because it turns out to have been wrong." *Id.* To establish that evidence has been fabricated, a Plaintiff must provide "persuasive evidence" supporting the conclusion that the Defendant was aware that the evidence was improper and thus offered it in bad faith. "Accordingly, . . . it will be an unusual case in which a police officer cannot obtain a summary judgment in a civil action charging him with having fabricated evidence." *Id.* Although the

12

Third Circuit made these statements in regard to the stand-alone claim based on the use of fabricated evidence, because the use of fabricated evidence also stood as the basis for the malicious prosecution claim at issue in *Halsey*, this Court concludes that the same reasoning should be applied in malicious prosecution cases alleging fabricated evidence.

In his deposition testimony, Plaintiff did not provide any actual testimony alleging that he had seen the weapon planted. Instead, he testified only that he didn't see the officers find the gun, and instead only saw one of the officers looking around – not surprising given the testimony of the officers that the gun was found before he was even arrested and one of the officers was standing over it. Plaintiff briefly suggested that the gun must have been planted because he "didn't have that weapon on [his] person" and the officers indicated that they found a weapon which they attributed to him. Plaintiff's testimony thus no more than assert that, because he alleges he did not have any weapon, any weapon that was found must have been staged or fabricated. Importantly, Plaintiff has not provided the Court with any "persuasive evidence" that the gun in question was planted by the police officers. Thus, this Court cannot conclude that the record would reasonably support the conclusion that Defendant knew the gun found at the scene to have been fabricated evidence. As such, Defendant was entitled to rely on knowledge that a gun was found, and, between Plaintiff's flight, his prior conviction, and the evidence which would support an officer concluding that the gun found belonged to Plaintiff, Defendant had probable cause to charge Plaintiff with the certain persons offense for which he was tried. Given the facts in the record, and the lack of any persuasive evidence sufficient to permit the conclusion that the gun was planted, this Court finds that no reasonable jury could conclude that Defendant lacked probable cause, and that summary judgment must therefore be entered in favor of Defendant as to

Plaintiff's malicious prosecution claim.

Plaintiff, in opposing the motion for summary judgment, raises several inconsistencies in the testimony of the four officers involved in this matter, such as to the nature and color of the handgun, and a few issues with the documentary evidence presented at trial – specifically the date on the property receipt for the gun which lists the offense date for the underlying crime as April 8, 2011, instead of May 8, 2011, apparently by mistake – and suggests that these issues necessitate a trial in this matter. This Court acknowledges that Plaintiff's acquittal indicates that at least the jury in his criminal trial concluded that these inconsistencies created a reasonable doubt as to whether Plaintiff was guilty of possessing the weapon. However, the standard to be applied in this civil matter is considerably lower than proof of guilt beyond a reasonable doubt. Specifically, Defendant need only have had an objectively reasonable belief that Plaintiff was guilty of a crime at the time Plaintiff was charged and Defendant initiated criminal proceedings against Plaintiff. These asserted inconsistencies and the apparently mistaken date placed on the evidence sheet – which the Court notes was not prepared by the four officers involved in this matter – are insufficient, without some direct and persuasive evidence of fabrication, to prevent this Court from finding that no reasonable jury could conclude that Defendant lacked probable cause to charge Plaintiff with a crime. Thus, summary judgment is appropriate in this matter and Defendant's motion is granted. Because this Court's conclusion as to probable cause is dispositive of Plaintiff's sole claim in this matter, Defendant's remaining arguments in his motion for summary judgment need not be addressed.

## III. CONCLUSION

For the reasons expressed above, Defendant's motion for summary judgment is GRANTED and judgment is entered in favor of Defendant. An appropriate order follows.


Dated: April 3, 2018

*s/ Susan D. Wigenton*
Hon. Susan D. Wigenton,
United States District Judge